1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9   JOSE LUIS LOPEZ MOCTEZUMA,              No. CIV S-06-0627-FCD-CMK-P

10                 Petitioner,

11         vs.                              FINDINGS AND RECOMMENDATIONS

12   JAMES A. YATES,

13                 Respondent.

14   _____/

15              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

16   habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is petitioner's petition for

17   a writ of habeas corpus (Doc. 1), filed on March 24, 2006, respondent's answer (Doc. 14), filed

18   on July 19, 2006, and petitioner's reply (Doc. 16), filed on September 5, 2006.

19

20                              **I.  BACKGROUND**

21     **A.    Facts**

22              The parties agree on the following statement of facts:[1]

23                      On the early morning hours of December 25th, 1995, the victim in
               this particular case, Macario Robledo . . . was in the accompany of Hilda
24             Romero, Adrianna Cruz, and Rafael Guiterrez Martinez.  The four of them

25   _____

         [1]        These facts were recited by the prosecutor at petitioner's change of plea hearing.
26   As part of a plea agreement, petitioner admitted that these facts are accurate.

                                        1

were returning home from a Christmas part at about 3:30 in the morning when they approached their residence at 126 Willow in the city of Manteca, San Joaquin County.  As they were approaching their front door, the defendant came up and grabbed Hilda Romero, because he wanted to talk to her.  The defendant and Ms. Romero had had a boyfriend-girlfriend relationship prior to this occasion.  When he grabbed her, he began to drag Ms. Romero off.  The three friends – Macario, Adrianna, and Rafael – tried to stop the defendant from taking Hilda away.

The defendant pulled out a gun, threatened them, and at one point fired off two shots.  One shot struck Mr. Robledo in the neck, severing the aorta and landing in the chest cavity at the spinal chord.

The pathologist in this particular case, Bill Maduros, would indicate that the cause of Mr. Robledo's death was in fact a gunshot wound that he received in this case.

**B.**   **Procedural History**

The state court recited the following procedural history:

Defendant Jose Luis Lopez Moctezuma appeals from the sentence imposed following his plea of no contest to voluntary manslaughter and three counts of assault with a firearm, and his admission that he was personally armed with a firearm during the commission of the manslaughter (citations to the California Penal Code omitted).  As part of the plea, it was agreed defendant would be sentenced to 15 years in state prison.  Specifically, the parties agreed he would be sentenced to the upper term of 11 years on the manslaughter conviction, receive the low term of three years on the firearm enhancement, and be sentenced to one-third of the midterm (one year) on the three assault with a firearm convictions, with one term running consecutive and the other two running concurrently.

Petitioner was sentenced consistent with the plea agreement.  The California Court of Appeal affirmed the conviction and sentence in a reasoned opinion issued on June 29, 2005.  The California Supreme Court denied review, without comment or citation, on September 21, 2005.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  For instance, when the state court reaches a

2

1   decision on the merits, but provides no reasoning to support its conclusion, a federal habeas

2   court independently reviews the record to determine whether the state court clearly erred in its

3   application of Supreme Court law.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

4   Similarly, when it is clear that a state court has not reached the merits of a petitioner's claim,

5   because it was not raised in state court or because the court denied it on procedural grounds, the

6   AEDPA deference scheme does not apply and a federal habeas court must review the claim de

7   novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not

8   apply where Washington Supreme Court refused to reach petitioner's claim under its

9   "relitigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that,

10  where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not

11  apply because evidence of the perjury was adduced only at the evidentiary hearing in federal

12  court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state

13  court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).

14   When the state court does not reach the merits of a claim,  "concerns about comity and

15  federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

16          Where the AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d)

17  is not available for any claim decided on the merits in state court proceedings unless the state

18  court's adjudication of the claim:

19                  (1) resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal law, as
20                  determined by the Supreme Court of the United States; or

21                  (2) resulted in a decision that was based on an unreasonable
                    determination of the facts in light of the evidence presented in the State
22                  court proceeding.

23  28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Lockhart v.

24  Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).

25          Under § 2254(d), federal habeas relief is available where the state court's decision

26  is "contrary to" or represents an "unreasonable application of" clearly established law.  In

1  Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the

2  Court), the United States Supreme Court explained these different standards.  A state court

3  decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the

4  Supreme Court on the same question of law, or if the state court decides the case differently than

5  the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

6  court decision is also "contrary to" established law if it applies a rule which contradicts the

7  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

8  that Supreme Court precedent requires a contrary outcome because the state court applied the

9  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

10  Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

11  id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

12  determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040,

13  1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

14  case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

15  is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

16      A state court decision is reviewed under the far more deferential "unreasonable

17  application of" standard where it identifies the correct legal rule from Supreme Court cases, but

18  unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith,

19  123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams,

20  suggested that federal habeas relief may be available under this standard where the state court

21  either unreasonably extends a legal principle to a new context where it should not apply, or

22  unreasonably refuses to extend that principle to a new context where it should apply.  See

23  Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

24  decision is not an "unreasonable application of" controlling law simply because it is an

25  erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade,

26  123 S.Ct. 1166, 1175 (2003).  An "unreasonable application of" controlling law cannot be found

4

1   even where the federal habeas court concludes that the state court decision is clearly erroneous.

2   See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to give proper

3   deference to state courts by conflating error (even clear error) with unreasonableness."  Id.  As

4   with state court decisions which are "contrary to" established federal law, where a state court

5   decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

6   unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

7

8                                    **III.  DISCUSSION**

9           Petitioner claims that his negotiated sentence violated his Sixth Amendment

10  rights under Blakely v. Washington, 542 U.S. 296 (2004).  First, petitioner asserts that the state

11  trial court committed structural error by imposing a sentence greater than the maximum that

12  could have been imposed based on the facts admitted by petitioner.  Next, petitioner claims that

13  Blakely invalidates California's three-tiered sentencing scheme.  Finally, petitioner argues that

14  imposition of consecutive sentences violates Blakely.  Respondent concedes these claims are

15  exhausted.    In addressing these claims, the state court stated:

16          Applying the Sixth Amendment to the United Stated Constitution,
        the United States Supreme Court held in Apprendi v. New Jersey, 530
17      U.S. 466 (2000), that, other than the fact of a prior conviction, any fact
        that increases the penalty for a crime beyond the statutory maximum must
18      be tried to a jury and proved beyond a reasonable doubt.  Id. at 490.  For
        this purpose, the statutory maximum is the maximum sentence that a court
19      could impose based solely on facts reflected by a jury's verdict or
        admitted by the defendant.  Thus, when a sentencing court's authority to
20      impose an enhanced sentence depends upon additional fact findings, there
        is a right to a jury trial and proof beyond a reasonable doubt on the
21      additional facts.  Blakely, 159 L.Ed.2d at 413-14.
            Relying on Apprendi and Blakely, defendant claims the trial court
22      erred in imposing the upper term on his manslaughter conviction in count
        1 and imposing a consecutive sentence as to the assault in count 2.  The
23      contention fails.
            Plea bargaining is a judicially and legislatively recognized
24      procedure.  People v. Masloski, 25 Cal.4th 1212, 1216 (2001).  When, as
        part of a plea agreement, a defendant specifies the maximum sentence that
25      may be imposed, he necessarily admits that his conduct is sufficient to
        expose him to that punishment and reserves only the exercise of the trial
26      court's sentencing discretion in deciding whether to impose that sentence.

1           <u>People v. Hoffard</u>, 10 Cal.4th 1170, 1181-82 (1995).

2 Because the state court applied the correct federal legal rules, this court must review the state

3 court's decision under the deferential "unreasonable application of" standard.

4           As to petitioner's first argument – that he was sentenced beyond the statutory

5 maximum based on facts found only by the trial court – the court finds that the state court's

6 decision was not an unreasonable application of <u>Blakely</u>. Specifically, as respondent notes,

7 petitioner admitted to the underlying facts and accepted a 15-year sentence in his plea

8 agreement. Petitioner also admitted to using a firearm. Based on the admitted facts, and

9 consistent with the agreed-upon sentence, petitioner was sentenced to 15 years. The trial court

10 did not impose a longer sentence based on the firearm enhancement. Therefore, petitioner's

11 claim fails for two reasons. First, petitioner's sentence was based on the facts he admitted and

12 not based on any facts found only by the trial court. Second, petitioner's sentence was not

13 increased beyond the 15 years stipulated to in the plea agreement.

14           Next, petitioner claims that <u>Blakely</u> forecloses application of California's three-

15 tiered sentencing scheme. The state court addressed this issue as follows: "The California

16 Supreme Court recently issued its decision in <u>People v. Black</u>, [35 Cal.4th 1238 (2005)], holding

17 that <u>Blakely</u> does not apply to California's [three-tiered] determinate sentencing law." The court

18 finds that this conclusion is based on a reasonable application of <u>Blakely</u>. Under <u>Blakely</u>,

19 judicial fact-finding in sentencing is permitted in selecting a sentence that is within the statutory

20 range for a given offense. In this case, California law provides for a three-level sentencing range

21 and gives the trial court the opportunity to find facts in order to determine, in its discretion,

22 whether a defendant will be sentenced at the low end, middle, or high end of the sentencing

23 range. As the California Supreme Court explained in <u>Black</u>:

24         [I]n operation and effect, the provisions of the California determinate
        sentence law simply authorize a sentencing court to engage in the type of
25         factfinding that traditionally has been incident to the judge's selection of
        an appropriate sentence within a statutorily prescribed sentencing range.
26         Therefore, the upper term is the "statutory maximum" and a trial court's

imposition of an upper term sentence does not violate a defendant's right
to a jury trial under the principles set forth in . . . <u>Blakely</u>.

35 Cal.4th at 1254.

Finally, petitioner claims that imposition of consecutive sentences violates
<u>Blakely</u>. Again, the court disagrees. Because consecutive sentencing in California does not
involve any judicial factfinding, <u>see</u> California Rule of Court 4.433(c), <u>Blakely</u> simply is not
implicated.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for
a writ of habeas corpus (Doc. 1) be denied.[2]

These findings and recommendations are submitted to the United States District
Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days
after being served with these findings and recommendations, any party may file written
objections with the court. The document should be captioned "Objections to Magistrate Judge's
Findings and Recommendations." Failure to file objections within the specified time may waive
the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:   October 24, 2006.

_Craig M. Kellison_
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

---

[2]    Because the court concludes that petitioner is not entitled to relief on the merits, it
is not necessary to address respondent's procedural default argument.

7